IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LYNELL B. TUCKER,<br><br>    Plaintiff,<br><br>v.<br><br>DELAWARE DEPARTMENT OF<br>CORRECTION, PERRY PHELPS, solely in<br>his official capacity as Commissioner of the<br>Delaware Department of Correction, and<br>CONNECTIONS COMMUNITY<br>SUPPORT PROGRAMS, INC.,<br><br>    Defendants. | C.A. No. 16-352-LPS |

Rodger D. Smith II, Stephen J. Kraftschik, and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware

    Attorneys for Plaintiff.


Stephen J. Milewski and Roopa Sabesan, WHITE AND WILLIAMS LLP, Wilmington, DE

    Attorneys for Defendant Connections Community Support Programs, Inc.

**MEMORANDUM OPINION**

March 26, 2019
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Lynell B. Tucker ("Plaintiff") is an inmate at James T. Vaughn Correctional Center ("Vaughn"), located in Smyrna, Delaware. Plaintiff filed this action *pro se* on May 12, 2016. (D.I. 6) The Court dismissed Plaintiff's original complaint for failure to state a claim, but granted leave to amend and granted Plaintiff's request for counsel through the Federal Civil Panel. (D.I. 19 at 7) With the assistance of counsel, Plaintiff filed the now-operative Amended Complaint on July 7, 2018, asserting claims under 42 U.S.C. Section 1983 and the Americans with Disabilities Act ("ADA"). (D.I. 37) ("Complaint" or "Compl.") Defendants Delaware Department of Correction ("DOC") and Perry Phelps ("Phelps") answered Plaintiff's Complaint on July 30, 2018. (D.I. 41)

Pending before the Court is Defendant Connections Community Support Programs, Inc.'s ("Connections") motion to dismiss for failure to state a claim. (D.I. 44) The Court will grant in part and deny in part Connections' motion.

## II. BACKGROUND

Connections provides mental health care services for DOC facilities. Plaintiff alleges he was provided constitutionally-deficient mental health care from Connections while incarcerated at Vaughn. Plaintiff is diagnosed with Major Depressive Disorder, Recurrent Episodes, Mild; and Antisocial Personality Disorder. (Compl. at ¶ 7) While in custody, and placed at the Delaware Psychiatric Center, he was diagnosed with "Conduct Disorder," "Reading Disorder," "Disorder of Written Expression," "Math Disorder," "Antisocial Traits," and "Borderline Intellectual Functioning," and was found to have a "Global Assessment of Functioning" or

1

"GAF" score of 50. (*Id.* at ¶ 8) Plaintiff can be described as having a serious mental illness ("SMI"). (*Id.* at ¶ 7)

Connections developed an Individual Treatment Plan ("ITP") for Plaintiff, which recommended he be housed in a Residential Treatment Center ("RTC") which provides an outpatient standard of care. (D.I. 45 at 4; Compl. at ¶ 9) His most recent ITP recommends "45 minutes of individual therapy once a week, and 60 minutes of group therapy five times a week." (Compl. at ¶ 10)[1]

Plaintiff complains he has suffered a "degradation of his mental health" from extended stays in the Secured Housing Unit ("SHU"). (*Id.* at ¶¶ 13-15) SHU involves solitary confinement for 21.5 hours per day in a 8' x 13' cell, and while housed in SHU Plaintiff was not provided with his recommended mental health treatment. (*Id.* at ¶ 14) Plaintiff describes his SHU confinement as a cycle, brought on as a punishment for behaviors emblematic of his mental health problems, and causing only increasing manifestations of those same issues. (*Id.* at ¶ 15)[2] Plaintiff alleges "it has been Connections' policy, custom, or practice to acquiesce to such treatment." (*Id.* at ¶ 18) Plaintiff notes a plethora of mental and physical harms that solitary confinement can cause a prisoner with SMI, including "insomnia, anxiety, panic, withdrawal, hypersensitivity to stimuli, ruminations, cognitive dysfunction, hallucinations, loss of control, aggression, rage, paranoia, hopelessness, depression, self-mutilation, and suicidal ideation and behavior." (*Id.* at ¶ 21)

---

[1] To the extent Plaintiff's Complaint suggests that this is below an appropriate standard of care, or constitutes medical negligence, he does not appear to be arguing this as a basis for his actual claim that his constitutional rights have been violated.

[2] Plaintiff describes, as an example, being sent to SHU as punishment for a note he wrote to express his thoughts as a form of therapy, which was condemned as "Unauthorized Communication," "Threatening Behavior," and "Failing to Obey an Order." (Compl. at ¶ 16)

2

As a separate issue, Plaintiff alleges that Connections disregarded his medical history and his objections by prescribing risperidone, which caused him to suffer an adverse reaction. Treatment notes for Plaintiff's admission to St. Francis Hospital on August 23, 2005 indicate he suffered from priapism (prolonged erection), apparently caused by zoloft and risperdal (a form of risperidone). (*Id.* at ¶ 28) A November 3, 2006 medical opinion recommended that Plaintiff not take risperidone, zoloft, or zyprexa for fear of priapism. (*Id.* at ¶ 29) Plaintiff alleges that despite this history, Connections employees prescribed risperidone at Vaughn in 2014, and told him that it could not cause priapism. (*Id.* at ¶ 31) Plaintiff refused to take the medication on September 12, 15, 16, 17, and 18. (*Id.* at ¶ 32) Still, he was given risperidone at 3:30 p.m. on September 18, 2014, and noticed priapism beginning around 5:30 p.m., followed shortly after by excruciating pain. (*Id.* at ¶¶ 33-34) He was seen by a Connections nurse at 8:30 a.m. the next day and taken to Kent General Hospital at 9:45 a.m., where he was treated and advised of the risk of permanent injury. (*Id.* at ¶ 35) Plaintiff alleges that even after this incident, he was offered risperidone by a Connections nurse. (*Id.* at ¶ 36) Plaintiff alleges his suffering resulted from a failure to provide immediate treatment, a failure to train and supervise prison staff to deal with such situations, and a systemic failure to review and consider inmates' refusal of medicines.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

**B.    Section 1983**

In an action under 42 U.S.C. § 1983 ("Section 1983 or "§ 1983"), the plaintiff must prove two essential elements to prevail: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federally secured right. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Section 1983 is not a source of substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, (2002). Rather, it is a means to redress violations of federal law by state actors. *Id.*; *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F.Supp.2d 491, 498–99 (M.D. Pa. 2005).

**C.    Eighth Amendment**

The Eighth Amendment proscription against cruel and unusual punishment mandates that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). To set forth a cognizable claim for a violation of the Eighth Amendment, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials indicative of deliberate indifference to that serious need. *See id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials are deliberately indifferent if they are aware that a prisoner faces a substantial risk of serious harm and fail to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Prison officials may show deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

To prevail on his claim, Plaintiff must "demonstrate (1) that the defendant [was] deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197. An inmate may show that a prison official was deliberately indifferent through evidence that the official intentionally denied or prevented receipt of, or delayed access to, medical care. *See id.* While prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by. . . [a] doctor," they can be found to be deliberately indifferent if they refuse to provide treatment that has been prescribed by a doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "[D]eliberate indifference requires more than evidence that the defendants *should* have recognized the excessive risk and responded to it; it requires evidence that the defendant *must* have recognized the excessive risk and ignored it." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 138 (3d Cir. 2001).

Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by Plaintiff. *Sample v. Diecks*, 885 F.2d 1099, 1117-18 (3d Cir. 1989) (internal quotation marks omitted).

## IV. DISCUSSION

Connections moves to dismiss Plaintiff's Complaint for failure to state a claim on which relief may be granted. Its motion is directed only to Plaintiffs' claims as alleged against Connections.

### A. Count I: Mental Health Treatment and SHU Housing

Plaintiff alleges that "Defendants have been made aware of, but are deliberately indifferent to, the deterioration in his mental condition that Mr. Tucker has suffered and

6

continues to suffer as a result of his solitary confinement while in the SHU." (Compl. at ¶ 43) Plaintiff supports this contention by pointing out that he was "punished for therapeutic writing done at Connections' direction." (D.I. 48 at 7-8) Plaintiff argues that "Connections did not attempt to intervene to prevent Mr. Tucker's placement in the SHU despite its ability to do so." (*Id.* at 8) From these facts, Plaintiff asks the Court to infer "a policy, practice or custom of failing to intervene to prevent inmates under its care who are suffering from serious mental illness from being placed in solitary confinement." (*Id.*)

The Court will dismiss Count I against Connections because Plaintiff has not plausibly pled that Connections has "maintained a policy, practice, or custom that demonstrates deliberate indifference to a serious medical need." (D.I. 45 at 8) (citing *Steedley v. McBride*, 2015 WL 4456047, at *6 (D. Del. June 20, 2015)) Plaintiff has made no allegation that "Connections or its staff was personally involved in, or had any decision-making authority over, his discipline or housing." (*Id.* at 9 n.1) Plaintiff contends that Connections' therapy "led to placement in solitary confinement" and thus it "contributed to and otherwise acquiesced to his placement in the SHU." (D.I. 48 at 9) However, the pleaded facts demonstrate that Connections actually recommended against such housing. Plaintiff has not alleged that Defendant had authority over housing placement, nor is it a plausible inference from the allegations he has made. *See generally McTernan v. City of York*, 564 F.3d 636, 659 (3d Cir. 2009) ("Because McTernan does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker, the restriction cannot 'fairly be said to represent official policy,' warranting the imposition of municipal liability.").[3]

---

[3] Plaintiff's reliance on *Hutchinson v. Cunningham*, 2018 WL 1474906, at *4 (M.D. Ala. Jan. 23, 2018), report and recommendation adopted, 2018 WL 1474532 (M.D. Ala. Mar. 26, 2018), is unavailing. There, while the Court found a claim could be stated against hospital defendants

## B. Count III: Risperidone Treatment

The Court will deny Connections' motion to dismiss Count III because Plaintiff has adequately pled that Connections' "deliberate indifference to Mr. Tucker's serious medical condition is the proximate cause of physical and psychological harm suffered by Mr. Tucker." (Compl. at ¶ 58) Plaintiff's medical records include multiple instances of adverse reactions to risperidone, and Plaintiff repeatedly refused to take the medication. Nonetheless, Connections employees prescribed the medication for Plaintiff, and after he eventually took it he was beset by extreme pain, requiring medical treatment and raising the potential for permanent damage. Plaintiff has set forth a cognizable claim that Connections "fail[ed] to adopt and implement the identified policies and procedures necessary to prevent or timely address adverse reactions to prescription drugs." (D.I. 48 at 11) *See also Hasty v. County of Montgomery*, 2014 WL 830282, at *3-4 (E.D. Pa. Mar. 4, 2014) The priapism that Plaintiff experienced was the direct result of Connections' allegedly deficient policies. At this stage, Plaintiff has adequately stated a claim on which relief may be granted. *See Hasty*, 2014 WL 830282, at *4 (denying Defendants' motion to dismiss where Plaintiff "personally refused medication from the nurses because he thought it was causing the priapism").

Connections emphasizes that, to proceed on his claim, Plaintiff must allege the specific policy or practice that caused him to suffer constitutional injury. (D.I. 45 at 11) (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014)) Plaintiff has, however, alleged

---

who placed a plaintiff in solitary confinement for convenience rather than disciplinary reasons, the claims against the private medical provider (who had no authority over the plaintiff's placement) were dismissed. *See id.* at *15 ("[T]he amended complaint is completely silent on the scope of Drs. Kern and Bates's final policymaking authority for QCHC and certainly does not allege that either Dr. Kern or Dr. Bates had final policymaking authority over an inmate's housing or the specific conditions of an inmate's confinement.").

8

Defendant's repeated failure to notice his history of adverse reactions to risperidone, his refusals to take it, and the clarity of his medical history on these points – all of which he alleges to be the result of a policy or practice of Connections. (*See, e.g.*, Compl. at ¶¶ 55-60) He has stated a plausible claim, sufficient to survive Connections' motion to dismiss. *See Shivers v. Connections, et al.*, C.A. No. 17-964-RGA D.I. 42 at 4 (plaintiff adequately alleged "a custom or policy condoned by Connections" by alleging "that he submitted multiple sick calls and grievances that were either ignored or responded to weeks after submission, all relating to the same medical issues"); *see also* D.I. 48 at 2 (answering brief explaining Plaintiff alleges Connections "(a) failed to establish and maintain a system that allowed inmates with serious medical conditions to receive treatment; (b) failed to train and supervise medical staff to recognize an emergency situation and secure immediate care for individuals with such medical needs; and (c) failed to establish a proper system for review and consideration of an inmate's refusal of medication").

Connections' contention that Plaintiff "has not alleged even one prior instance where another inmate suffered similar harm or mistreatment from the allegedly defective policy" (D.I. 45 at 12) does not change the outcome. Alleging a recurrent pattern is only one way of alleging a risk of constitutional injury. *See Beers-Capitol*, 256 F.3d at 133.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss will be granted as to Claim I and denied as to Claim III. An appropriate Order follows.

9